*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MOSHE GRANT,

        Plaintiff,

v.

THOMAS J. SLATTERY, personally and in his capacity as School Safety Supervisor, *et al.*,

        Defendants.

Civil Action No.: 22-941(FLW)

**OPINION**

**WOLFSON, Chief Judge:**

Presently before the Court is a motion to dismiss plaintiff Moshe Grant's ("Plaintiff") Amended Complaint against Marlboro Board of Education (the "Board") and Thomas J. Slattery ("Slattery")[1], among others, affiliated with Marlboro Township Public Schools, (together "Defendants")[2] for failure to state a claim pursuant to Fed. R. of Civ. P. 12(b)(6). Plaintiff's claims arise from Defendants' alleged violations of Plaintiff's First Amendment rights predicated on 42 U.S.C. § 1983 and N.J.S.A. 10:6-2c, an alleged conspiracy by Defendants to violate those rights in contravention of 42 U.S.C. § 1985, and an alleged violation of Plaintiff's equal protection rights pursuant to 42 U.S.C. § 1983. For the reasons set forth below, Defendants' Motion is **GRANTED**.

---

[1] Defendant Slattery is the School Safety Supervisor of the Marlboro Public Schools.
[2] The remaining individual defendants include Eric Hibbs, Superintendent of Marlboro Public Schools; Dr. Randy Heller, President of the Board; Tricia Branch, Vice President of the Board; Kathleen Amster, Vice President of the Board; Aldo Patruno, member of the Board; Jessica Piernik, member of the Board; Christina Russotto, member of the Board; Susan Shrem, member of the Board; Jennifer Silacci, member of the Board; Jill Strafaci, member of the Board; and John Does 1-25.

1

However, in lieu of dismissal, Plaintiff is given leave to amend his equal protection claim under section 1983 only. He may do so within 21 days from the date of the accompanying order.

I. **FACTUAL AND PROCEDURAL HISTORY**

The relevant facts are derived from Plaintiff's Amended Complaint and the attached exhibits. Plaintiff is a resident of Morganville, New Jersey, and a parent of a child in the Marlboro Township School system. Amended Complaint ("Am. Compl."), at ¶ 4. On February 16, 2022, Plaintiff received a warning letter from Slattery regarding Plaintiff's alleged conduct at prior board meetings, which is attached to the Amended Complaint. (*See* Ex. A, February 16, 2022 Letter re: "Unruly Conduct at February 8, 2022 Marlboro Board of Education Meeting," ("Letter" or "Warning Letter").) The letter referenced two public school board meetings that Plaintiff attended. Specifically, on January 18, 2022 and February 8, 2022, the Board held meetings at the Marlboro Memorial Middle School located in Morganville, New Jersey. Am. Compl. at ¶ 18. These public meetings are not used for any classroom study purposes. *Id.* at ¶ 19. According to Plaintiff, he is well-known to Defendants as a parent who has voiced his disagreement with Marlboro Public Schools' masking policies for children due to his view of the perceived harm that such masking mandates are imposing on children. *Id.* at ¶ 20.

During the January 18, 2022 public meeting, Plaintiff spoke out against the Board's masking policies and used the obscene phrase "whatever the hell." *Id.* at ¶ 21. Plaintiff concedes that he apologized for using such language. *Id.*

During the February 8, 2022 meeting, Plaintiff spoke out a second time against the school's masking policies. *Id.* at ¶ 23. At the end of the February meeting, Plaintiff and a large group of other individuals who attended the meeting removed their masks. *Id.* at ¶ 26. According to Plaintiff, Slattery then "harassed" Plaintiff for taking off his mask and asked him to wear the mask.

*Id*. at ¶ 27.  However, the Warning Letter states that a security guard had asked Plaintiff to place his mask back on and Plaintiff refused.  (Letter, p.1.)  Further, the Letter states that when asked a second and third time to wear the mask, Plaintiff responded "[n]o, what are you on some fucking power trip" and challenged the security guard to compare "ball size[s]."  *Id*.[3]

As a result of those incidents, the Letter warned Plaintiff that his behavior was in direct violation of the school district's civility policy, Policy 9202:

> This disruptive behavior and use of offensively coarse language is concerning and will not be tolerated . . . .  Moving forward, you will cease all offensive, disrespectful, and confrontational language in our district buildings and with our district employees . . . **Further disruptive behavior shall result in you being banned from any or all school related events which is our prerogative . . . Repeated behavior described above and a refusal to leave school grounds will result in the assistance of law enforcement to facilitate your removal from school property. We will also press the requisite criminal charges.**

(*Id*.) (emphasis in original)  According to Defendant, and not disputed by Plaintiff, Plaintiff spoke at another public Board meeting on March 8, 2022, where he was permitted to speak freely and did so without using profanity or exhibiting disruptive behavior.

On February 22, 2022, Plaintiff filed an initial complaint in which he alleged that Defendants violated his civil rights under the First Amendment and N.J.S.A. 10:6-2c and conspired to violate his civil rights.  Pl. Compl., at ¶¶ 33-43.  Thereafter, Plaintiff amended his complaint, alleging the same claims against Defendants, as well as an additional claim that Defendants violated Plaintiff's equal protection rights under § 1982.  Am. Compl., ¶¶ 33-48.  On April 6, 2022,

---

[3]   As discussed more fully *infra*, Plaintiff and Defendants dispute the facts of the February 2022 incident.  Plaintiff argues that some facts in the Warning Letter are "false, taken out of context, and misconstrued . . . ." Am. Compl., at ¶ 31.

Defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6). Motion to Dismiss ("Mot. Dismiss").

## II. STANDARD OF REVIEW

### a. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. 11-4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id*. at 570; *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

### III. DISCUSSION

As a preliminary matter, Plaintiff disputes the content of the Warning Letter from the Board. Plaintiff alleges that "[t]he assertions of fact in the subject letter were mostly false, taken out of context, [] misconstrued, [and] designed to damage [Plaintiff's] good name and reputation in the community and generally." Am. Compl., ¶ 31. Although Plaintiff acknowledges that consistent with the Letter, he used the phrase "whatever the hell" at the first meeting on January 18, 2022, he takes issue with the Letter's description of the events that unfolded following the conclusion of the second meeting on February 8, 2022. According to Plaintiff, he remained fully masked during the meeting, but removed his mask as he was on his way out of the building. *Id*. at ¶ 26. Plaintiff alleges that Slattery then "approached and harassed [him] for having taken off his mask." *Id*. at ¶ 27. According to Plaintiff, Slattery's actions were undertaken "with knowledge and approval of some or all other defendants in order to punish [him] for exercising his constitutionally protected civil rights." *Id*. at ¶ 28. Further, Plaintiff claims that the Letter's assertion that he was "inside [an MTPS] school building" disregards (1) the building's designation as a "mixed use building" and its use during a time not contemplated by the Executive Order, *i.e.*, a time during which school classes and activities were not in session, and (2) the fact that the alleged conduct did not occur during the meeting, but rather following the meeting. Pl. Br., pp. 2, 8.

First as a matter of procedure, the Court can consider the Warning Letter because it is attached to Plaintiff's Amended Complaint and "integral to or explicitly relied upon in the [Amended Complaint]." *In re Rockefeller Ctr. Props., Ins. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted). However, the Court will not consider the factual

allegations in the Letter that are disputed by Plaintiff in the Amended Complaint. Specifically, I will not take as true the statement that Plaintiff stated to a security guard: "[n]o, what are you on some fucking power trip?" and that Plaintiff challenged the security guard to compare "ball size[s]" when asked to put on a mask. Rather, the Court will only consider the contents of the Letter to the extent it comports with Plaintiff's recounting of the incidents in his Amended Complaint. Namely, I will consider the Letter's assertion that Plaintiff cursed during the January 18, 2022 meeting as Plaintiff admitted using the phrase "whatever the hell," and the allegations that Plaintiff had removed his mask while inside a school building in violation of the mask mandate, E.O. 251, and was approached by a personnel for violating that policy.

Nevertheless, whether the alleged inappropriate behavior on the part of Plaintiff occurred in a mixed-use building, or at a time during which classes were not in session is immaterial. The Warning Letter clearly addresses Plaintiff's alleged violation of District Policy 9202-Civility which seeks to "maintain . . . schools and administrative offices free from disruptions and prevent[] unauthorized persons from school/district grounds." District Policy 9101-Civility, July 2014, p. 1. The Policy defines possible disruptions as including any individual who "[u]ses unreasonably loud and/or offensively coarse language for the purpose of offending the person(s) present or in reckless disregard for the probability of doing so." *Id*. Importantly, nowhere in the Policy does it specify that the Policy only applies in certain school buildings or only when classes are in session. Moreover, to the extent that Plaintiff argues that E.O. 251 is not applicable, such an argument is erroneous, as E.O. 251 mandates public schools to maintain a policy regarding mandatory use of face masks by visitors, among other individuals, in the indoor portion of school district premises and does not distinguish between types of buildings. *See* Executive Order No. 251, dated August

9, 2021, p. 4. In sum, I reject Plaintiff's contention that his conduct on February 8 did not contravene District Policy 9202-Civility and/or E.O. 251.

### a. Section 1983 First Amendment Claim

Plaintiff argues that Defendants retaliated against him for exercising his First Amendment right to free speech through Defendants' Warning Letter in violation of § 1983. Am. Compl. ¶ 33. Plaintiff reasons that the Letter sought to chill the further exercise of his constitutionally protected speech, because the Board disagreed with the content of such speech. In Plaintiff's view, his speech was designed to "protect children against injuries, learning deficits, psychological harm, and/or other damage which [Plaintiff] and the others in attendance with him reasonably believed are being caused to children by the Board's [mask] policy." Am. Compl., ¶ 32.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To assert a retaliation claim under 42 U.S.C. § 1983 predicated on the First Amendment, a plaintiff must show (1) that he or she engaged in a protected activity, (2) that the defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2012) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2007)). A defendant may defeat a retaliation claim by showing that the plaintiff would have engaged in the same action even if the plaintiff did not engage in the protected activity. *Id.* (citing *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d

Cir. 2002)). Plaintiff's claims, here, turn on the first prong—that is whether Plaintiff engaged in a genre of speech that is protected by the First Amendment.

When considering a First Amendment case that involves speech on property owned or controlled by the government, such as the case here, the classification of the forum dictates how courts review the First Amendment claim. *Galena v. Leone*, 638 F.3d 186, 197 (3d Cir. 2011) (citing *United States v. Marcavage*, 609 F.3d 264, 274 (3d Cir. 2010)) ("The degree of First Amendment protection a speaker enjoys depends on the type of forum in which his expressive activity occurred."). There are three categories of public forums on government-owned property: (1) the traditional public forum, (2) the designated public forum, and (3) the limited public forum. *Id.* Traditional public forums include public streets, parks, and other public areas commonly devoted to assembly and debate. *Id.* at 198. A designated public forum arises when a government entity intentionally designates property that has traditionally not been regarded as a public forum for use as a public forum. *Id.* Finally, a limited public forum is created when a government entity provides for "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Id.* In all three types of forums, the government may reasonably regulate time, place, and manner restrictions on speech. *Id.* A time, place, and manner restriction on speech is reasonable if it is content-neutral, narrowly tailored to serve an important government interest, and leaves open ample alternatives for communication of information. *Id.* at 199.

In this case, the dispute that occurred between Plaintiff and Defendants took place during and at the conclusion of school board meetings held by the Marlboro Board of Education. In that connection, the parties do not disagree that school board meetings are traditionally categorized as limited public forums. *See Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021); *Ison v. Madison Loc. Sch. Dist. Bd. Of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021); *Moms for Liberty – Brevard Cnty.,*

8

*Fl. V. Brevard Pub. Sch.*, No. 21-1849, 2022 WL 272940, at *2 (M.D. Fla. Jan. 24, 2022).  Thus, analysis under the criteria and standard for limited public forums is appropriate, here.  In the context of a limited public forum, the government enjoys even more leeway to restrict speech than in traditional or designated public forums, because limited public forums are not open to the public at large to discuss any and all topics.  *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017).  Specifically, the government is permitted to impose content-based restrictions in limited public forums without infringing on individuals' First Amendment rights, so long as the content being regulated is viewpoint neutral and "reasonable in light of the purpose served by the forum[.]"  *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001).

Content neutrality and viewpoint neutrality are related, but distinct, concepts.  Content-based discrimination occurs when the government limits speech on a general topic.  *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995).  Content-neutral restrictions regulate decorum, disruptions, and overall time, place, and manner restrictions.  *See Moms for Liberty*, 2022 WL 272940, at *2–3 (citation omitted).  For example, restrictions that prohibit disruption and require decorum by members of the public at community meetings are content-neutral policies.  *Dyer v. Atlanta Indep. Sch. Sys.*, 852 F. App'x 397, 402 (11th Cir. 2021).  Viewpoint discrimination, on the other hand, is a type of content-based regulation that targets a particular stance taken by speakers on a general topic.  *Rosenberger*, 515 U.S. at 829.  Viewpoint-neutral restrictions are those that are equally-applied without regard to the specific message and viewpoint advocated in the speech.  *Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878–79 (11th Cir. 2007).  However, content-neutral restrictions, such as decorum and disruption restrictions, are necessarily both viewpoint-neutral and subject-neutral.  *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1297 (7th Cir. 1996).

Courts have held that in a limited public forum, the government can, without violating a person's First Amendment rights, restrict the content or topic in individuals' speeches and expressions, so long as the restrictions are viewpoint-neutral. *See, e.g., Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1225 (11th Cir. 2017) (finding public-comment portions of board meetings limited to "issues of concern" to be content-based discrimination which is permitted in a limited public forum if it is viewpoint neutral); *Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021) (holding that a school board policy that limited the content of public matters related to the public schools and "prohibits all personal attacks, regardless of viewpoint" is reasonable in light of the purpose served by the forum because the policy is viewpoint-neutral); *Child Evangelism Fellowship of MD, Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 389 (4th Cir. 2006) (finding that Montgomery County Public Schools could restrict number or content of messages in the forum if done in a viewpoint neutral and reasonable manner).

Courts have also found that when the government restricts a plaintiff's disruptive behavior in a limited public forum, the restriction is content-neutral and, thus, there is no First Amendment violation. *See Eichenlaub v. Twp. of Inidana*, 385 F.3d 274, 281 (3d Cir. 2004) (holding that ejecting a speaker in a designated public forum for "badgering, constant interruptions, and disregard for the rules of decorum" was a content-neutral time, place, and manner restriction); *Olasz v. Welsh*, 301 F. App'x 142, 146 (3d Cir. 2008) (holding that restricting a speaker's disruptive behavior consisting of "badgering, constant interruptions, and disregard for the rules of decorum" constitute a time, place, and manner regulation that "survives even the most stringent scrutiny for a public forum") (quoting *Eichenlaub*, 385 F.3d at 281).

Additionally, when a school board executes a policy that prohibits abusive and obscene comments from the public during a school board meeting, there is no First Amendment violation.

*Moms for Liberty*, 2022 WL 272940, at *2. In *Moms for Liberty*, the plaintiff was interrupted multiple times by the board members while voicing his opinions during a school board meeting before eventually being asked to leave the meeting. *Id.* at *3. But, the court held that the board members' interruptions and sanctioning of the plaintiff were permissible because the plaintiff's speech was "abusive and disruptive," and that prohibiting such speech in a school board meeting is both content and viewpoint-neutral, because the board members were sanctioning the plaintiff's actions, not views, for the sake of maintaining decorum during the meeting. *Id.* This was evident, the court found, since the plaintiff was permitted to speak at future meetings, so long as his behavior was not disruptive.

Here, the Warning Letter describes behavior from both the January and February school board meetings, including use of profanity and mask removal in violation of a mask mandate, both of which violate the school policy.[4] The Court finds that the Letter's warning that Plaintiff's "disruptive behavior and use of offensively coarse language" would not be tolerated by the Board is both content and viewpoint neutral as it serves a purpose unrelated to the suppression of expression of speech. (Letter, p. 1.) Indeed, much like the school board members in *Moms for Liberty*, Defendants' Warning Letter to Plaintiff merely restricted Plaintiff's further use of offensive and disrespectful language, as well as disruptive behavior, for the sake of maintaining and preserving decorum. Importantly, the Letter never dissuaded Plaintiff from addressing the topic of mask-wearing in school board meetings, let alone targeted Plaintiff's critical statements of the school's mask mandate. In fact, like the plaintiff in *Moms for Liberty*, the school did not

---

[4] Plaintiff's use of the phrase "whatever the hell" and his disregard for the school's mask mandate while inside a school building, alone, constitute disruptive behavior. However, if it were true that Plaintiff also stated "[n]o, what are you on some fucking power trip," and challenged the security guard to compare "ball size[s]," upon being asked to put on his mask, the Board would have had an even stronger basis upon which to issue Plaintiff a warning.

11

preclude Plaintiff from voicing his opinions at a March 2022 school board meeting, as he was not being disrespectful nor confrontational. Further, I find that the restriction is reasonable in light of the Board's 9202 Civility policy which promotes respectful consideration from parents, among other members of the community, and seeks to maintain decorum within the forum.

Nevertheless, Plaintiff cites to *Snyder v. Phelps*, 562 U.S. 443 (2011), a case that involved church members protesting at the funeral of a marine killed in combat. In *Snyder*, the congregation members carried signs that stated, for instance, "Don't Pray for the USA," "Thank God for Dead Soldiers," and "God Hates Fags." *Id*. at 448. The church notified authorities in advance of its intent to picket at the time of the funeral, and the picketers complied with police instructions in carrying out their demonstration. *Id*. The marine's father filed suit alleging defamation, publicity given to private life, intentional infliction of emotional distress, intrusion upon seclusion, and civil conspiracy. *Id*. at 450. A jury found for the father on the IIED, intrusion upon seclusion, and civil conspiracy claims, but the congregation argued on appeal that the church was entitled to judgment as a matter of law because the First Amendment protected its speech. *Id*. The Supreme Court instructed that speech on matters of public concern is the "heart" of First Amendment protection, and found that the congregation's speech was entitled to special protection as the protests occurred at a public place and the signs related to broad issues of interest to society at large, rather than matters of purely private concern. *Id*. at 451,454.

However, Plaintiff's reliance on *Snyder* is misplaced as the facts in this case differ significantly from *Snyder*'s. Here, the events arising in this lawsuit occurred in a limited public forum, whereas the church protests in *Snyder* did not. As such, this Court assesses the facts in this case under the criteria for limited public forums as opposed to a public forum. More importantly, in *Snyder*, the Court noted that "any distress occasioned by [the congregation's] picketing turned

12

on the content and the viewpoint of the message conveyed, rather than any interference with the funeral itself." *Id.* at 457. Indeed, the "protest was not unruly; there was no shouting, profanity or violence." *Id*. In the instant case, however, the Board reprimanded Plaintiff because of his conduct at the meetings, not his anti-masking views.

Accordingly, Defendants' Warning Letter issued to Plaintiff following the January and February incidents constituted a content and viewpoint-neutral time, place, and manner restriction. As such, Plaintiff's Section 1983 First Amendment claim is dismissed.

### b. New Jersey Civil Rights Act

Plaintiff also asserts claims under the New Jersey State Constitution and the New Jersey Civil Rights Act arising out of the same January and February school board meetings. "The New Jersey Civil Rights Act . . . creates a private cause of action for violations of civil rights secured under the New Jersey Constitution [ ]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 442–44 (D.N.J. 2011). Similar to § 1983 of the Civil Rights Act, the NJCRA permits a party who has been deprived of civil rights secured under the New Jersey Constitution by a person acting under color of law to bring a civil action for damages and injunctive relief. NJCRA provides, in pertinent part, a private cause of action to

> [any] person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. 10:6-2(c). Courts in this district have consistently interpreted the NJCRA analogously to § 1983. *See Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal

counterpart: Section 1983."); *see also Ingram v. Tw. Of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) (nothing that New Jersey courts have also "consistently looked to federal § 1983 jurisprudence for guidance") (citation and internal quotation marks omitted).  Because Plaintiff has failed to plead engagement in protected activity, as required by § 1983 to state a First Amendment retaliation claim, Plaintiff's NJCRA claim likewise fails to state a claim for the same reasons stated above.

### c. Section 1985 Conspiracy Claim

Plaintiff further alleges that Defendants conspired to deprive Plaintiff of his constitutional rights in violation of 42 U.S.C. § 1985.  Am. Compl., at ¶ 43.  Section 1985 applies to civil rights conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 826 (1983) (citation omitted).  A plaintiff seeking to raise such a claim must allege (1) a conspiracy, with the purpose of depriving a person or class of persons of equal protection or privileges and immunities under the law, (2) an act in furtherance of that conspiracy, and (3) personal or property injury. *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015).  As such, for Plaintiff to establish a "class-based invidiously discriminatory animus," he must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious.  *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).

Nonetheless, Plaintiff fails to allege a sufficient § 1985 conspiracy claim.  First, Plaintiff cannot demonstrate that the alleged conspiracy by Defendants was motivated by racial or discriminatory animus against an identifiable protected class, since Plaintiff fails to allege that he is part of an identifiable class that requires constitutional protection.  Second, the Amended

Complaint does not describe any concerted action between the school board members necessary to plead conspiracy. *See Wierzbicki v. City of Jersey City*, No. 19-17721, 2021 WL 4148105, at *8 (D.N.J. Sept. 10, 2021) ("An allegation of conspiracy is insufficient when the plaintiff 'fails to plead actual agreement and concerted action sufficient to support any . . . form of conspiracy.'") (quoting *Steele v. Pub. Def. Middlesex Cnty.*, No. 19-412, 2021 WL 2850464, at *4 (D.N.J. July 8, 2021)). Rather, it merely states generally and conclusively, that some of the defendants conspired to violate Plaintiff's First Amendment rights without any additional supporting allegations. Am. Compl., ¶ 43. Finally, since the Court has already determined that Plaintiff has failed to allege retaliation for engaging in protected speech under § 1983 and the NJCRA, Plaintiff has not suffered injury to his person or property. Because Plaintiff failed to sufficiently allege any of the elements to support a conspiracy claim under § 1985, that claim is dismissed.

### d. Section 1983 Equal Protection Claim

Finally, Plaintiff alleges that Defendants deprived him of his equal protection rights under 42 U.S.C. § 1982. However, because § 1982 pertains to the rights of citizens to own and convey personal property, the Court construes Plaintiff's section 1982 claim as a Section 1983 claim. Plaintiff argues that Defendants deprived him of equal protection under the law because, according to Plaintiff, the Board treated him differently than other similarly situated individuals who had also removed their masks at the conclusion of the February meeting by sending him the Warning Letter. Am. Compl., ¶¶ 26, 46.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney General of State of N.J.*,

81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (emphasis added)).  When a classification involves "'fundamental personal rights'" or "'suspect distinctions such as race, religion, or alienage,'" it is subject to heightened scrutiny. *Cabrera v. Att'y Gen. United States*, 921 F.3d 401, 404 (3d Cir. 2019) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).  But a classification that involves neither fundamental rights nor suspect classes is subject to the more deferential rational-basis review. *Id.* (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)).  Under the rational basis test test, government action will be upheld so long as it rationally furthers a legitimate, articulated state purpose. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

At the outset, it appears that Plaintiff takes issue with alleged unequal enforcement of the mask mandate.  Plaintiff concedes that he violated the mask mandate, but nonetheless argues that he was treated differently than others who, according to Plaintiff, also violated the mandate.  Thus, the Court construes Plaintiff's equal protection claim as a selective enforcement claim.  To establish a selective enforcement claim, a Plaintiff must prove, among other elements, that other similarly situated persons were treated differently. *Hill v. Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Here, Plaintiff's selective-enforcement claim fails because he has not alleged that any similarly situated visitor was treated differently.  To the extent that Plaintiff alleges that other individuals also removed their masks at the conclusion of the meeting, such an allegation is insufficient to establish likeness in all relevant aspects.  For instance, Plaintiff does not aver that the other visitors violated the Civility Policy and E.O. 251, and did not receive warning letters.

Accepting the allegations set forth in the Amended Complaint as true, Plaintiff merely alleges that "[n]umerous other individuals attended the February 8, 2022 Board meeting" and "Defendants intentionally treated plaintiff differently than all others who were similarly situated by sending him the subject letter."  Am. Compl., ¶¶ 45-46.  Thus, Plaintiff has not shown that he is similarly situated to the other meeting attendees.  *See Zitter v. Petruccelli*, 744 F. App'x 90, 96 (3d Cir. 2018) (rejecting oyster farmer's claim that state conservation officials selectively enforced a disorderly persons statute upon oyster farmer's failure to show that any comparator farmer was treated differently).

To the extent Plaintiff asserts a garden variety equal protection claim, that claim also fails for the same reason.  Although the Supreme Court has recognized a "class of one" equal protection claim, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), to state a claim under that theory, a plaintiff must "allege[] that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id*. at 564.  *See also Hill v. Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) ("[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.").  "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim."  *Aulisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019).

Here, Plaintiff's equal protection claim likewise fails under the "class of one" theory because he has not identified any other sufficiently similarly situated individuals from whom he was treated differently.  *See Zitter*, 744 F. App'x at 96 (dismissing equal protection claim because plaintiff did not "allege any similarly situated person was treated differently"); *Spiker v. Whittaker*,

17

553 F. App'x 275, 280–81 (3d Cir. 2014) (plaintiff sex offender failed to state equal protection claim under "class of one" theory, in part, because plaintiff failed to show other offenders were similarly situated).  Thus, the Court dismisses Plaintiff's § 1983 equal protection claim.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  However, in lieu of dismissal of Plaintiff's equal protection claim under section 1983, Plaintiff is given leave to amend *this* claim only, within 21 days from the date of the accompanying order.


Date: September 29, 2022                                          /s/ Freda L. Wolfson
                                                                  Hon. Freda L. Wolfson
                                                                  U.S. Chief District Judge